**E-FILED on** ___9-7-06___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL NARVIOS,<br><br>    Petitioner,<br><br>    v.<br><br>A.A. LAMARQUE, Warden,<br><br>    Respondent. | No. C-02-05378 RMW<br><br>ORDER DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS & DEFERRING FINAL RULING<br><br>**[Re Docket Nos. 1, 11, 24]** |

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for nineteen counts under California Penal Code §§ 288, 288a, 288.5, and 289. For the reasons set forth below, the court denies the petition.

## I. BACKGROUND[1]

Petitioner moved in with his girlfriend Glorina in 1993. The two lived in South San Francisco with petitioner's son and Glorina's daughter, Cassandra. Petitioner temporarily moved out in 1996 when the couple broke up, but he soon returned to live with Glorina when he found himself in financial hardship. In September 1997, petitioner was injured during an argument with Glorina,

---

[1] Except where otherwise noted, the facts are taken from the opinion of the Court of Appeal affirming petitioner's conviction, *People v. Narvios*, A088545 (May 21, 2001) (unpublished), which is included as Exhibit B to the petition, and will be cited elsewhere as "App. Op."

1  and as a result of his injuries, petitioner lost his memory and quit his job. He recuperated in
2  Glorina's home.

3        Cassandra, then aged nine, took care of petitioner as he recovered. During this period, the
4  two began to "cuddle" on petitioner's bed. The cuddling developed into a consensual sexual
5  relationship. The two had sex for the first time around November 1997. Over several months the
6  two had sexual intercourse approximately twelve times and engaged in oral sex approximately six
7  times; petitioner digitally penetrated Cassandra at least twice. Petitioner tried to use a condom once
8  but found it unexciting. They professed their love for one another.

9        After some time, petitioner began to suspect that Cassandra was pregnant. Home pregnancy
10 tests returned positive results. Glorina learned of the pregnancy and feared that Cassandra's father
11 would attempt to gain custody of Cassandra if he discovered her condition. Petitioner, Glorina, and
12 Cassandra decided to fly to the Philippines in May 1998 so that Cassandra's child could be delivered
13 without her father's knowledge. However, the day before their scheduled flight, petitioner called the
14 police from a hotel to turn himself in.

15       When Officer Donald Olsen arrived at the hotel, petitioner told him that he was having a
16 relationship with his girlfriend's ten-year-old daughter. Olson drove petitioner to the police station
17 where he voluntarily confessed to his sexual relationship with Cassandra. The confession was
18 videotaped. During this time, Officer John Kallos went to Glorina's house to speak with Cassandra.
19 Cassandra told the officer that she engaged in sexual intercourse approximately fifteen times with
20 petitioner. She also stated that they had mutual oral sex and that she was pregnant. Following
21 petitioner's videotaped confession, Kallos conducted a videotaped interview with Cassandra at the
22 police station. In the taped interview, she repeated that she and petitioner had intercourse
23 approximately fifteen times and that it was always consensual. She stated that petitioner used a
24 condom once or twice, that they had oral sex "[l]ike 10 [times] or something," and that petitioner
25 had digitally penetrated her on some occasions.

26       An examination of Cassandra several days after the interview revealed that Cassandra had
27 contracted venereal warts, a sexually-transmitted disease. On July 20, 1998, Cassandra gave birth to
28 a son. A paternity test indicated a 99.94% probability that petitioner was the father. At petitioner's

trial, the parties stipulated to Cassandra's date of birth and that her pregnancy resulted from a sexual relationship with petitioner. At the time of the baby's birth, Cassandra was ten years old and petitioner was fifty.

Petitioner was charged with twenty offenses under California Penal Code §§ 288, 288a, 288.5, and 289. Court-appointed trial counsel represented petitioner. The prosecutor moved *in limine* to admit Cassandra's out-of-court statements to Kallos while petitioner moved to compel Cassandra's live testimony. The court held a hearing to determine whether Cassandra would testify. In response to the prosecutor's questions, Cassandra stated that she would not discuss her relationship with petitioner and that it would be too embarrassing and painful for her to testify. The court found that Cassandra was "unavailable as a witness" and admitted the statements.

A jury trial was held in August 1999. During the trial, petitioner testified and admitted his sexual relationship with Cassandra. The jury found petitioner guilty of the following offenses: six counts under Penal Code § 288a(c) of oral copulation with a child under fourteen and more than ten years younger than petitioner; two counts under Penal Code § 289(j) of digital penetration of a child under fourteen and more than ten years younger than petitioner; ten counts under Penal Code § 288(a) of lewd and lascivious conduct with a child under fourteen; and one count under Penal Code § 288.5 of continuous sexual abuse of a child under fourteen. Petitioner was sentenced to a total prison term of thirty-one years.

Petitioner was sentenced to the thirty-one year term on September 9, 1999. On May 2, 2001, the state appellate court affirmed the judgment. The state supreme court denied review on August 15, 2001. *People v. Narvios*, S098229 (Cal.).[2] Petitioner filed a federal habeas petition in this court on November 12, 2002 claiming violation of his Sixth Amendment rights. Petitioner contends that he was deprived of his Sixth Amendment rights by (1) ineffective assistance of counsel and (2) the trial court's admission of his victim's out-of-court statements.

---

[2] A copy of this order is attached to the petition as Exhibit A.

## II. ANALYSIS

### A.  Standard of Review

This court will entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Petitioner bears the burden of proof, by a preponderance of the evidence, that his custody violates the Constitution, laws, or treaties of the United States. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002). This Court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

On a petition for habeas corpus, a federal court looks to the decision of the highest state court to determine whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). It also looks to any lower court decision examined or adopted by the highest state court to address the merits. *See Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state

1  appellate court examined and adopted some of trial court's reasoning, trial court's ruling is also
2  relevant); *Collins v. Rice*, 348 F.3d 1082, 1087 (9th Cir. 2003) (where state appellate court adopted
3  reasons cited by trial court, federal review necessarily includes discussion of trial court decision).

### B.  Ineffective Assistance of Counsel

The right to effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution has been clearly established by the Supreme Court. *See Strickland v. Washington*, 466 U.S. 668 (1984). In judging a claim of ineffective assistance of counsel, a court must ask whether counsel's conduct so undermined the adversarial process that the result of the trial cannot be relied upon as just. *Id.* at 686. The petitioner must establish (1) that counsel's performance was deficient and (2) that petitioner was prejudiced by counsel's deficient performance. *Id.* at 687-94. In establishing ineffective assistance, the relevant inquiry is not what defense counsel *could* have done, but rather whether the choices he made were reasonable. *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Petitioner must show that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.*

Petitioner argues that "a reasonably competent attorney would realize that, if Cassandra's statements were not admissible, there was a lack of corroboration of petitioner's confession and that . . . the confession would not be admissible." Pet. at 37. Petitioner contends that counsel's failure to object to the admission of his confession on *corpus delicti* grounds constituted ineffective assistance of counsel. *Id.* at 36-37.

The California Court of Appeal rejected this contention. The court found that petitioner had not established the first element of ineffective assistance under *Strickland*, namely that counsel's performance fell below an objective standard of reasonableness when measured against prevailing professional norms. App. Op. at 14. The court found it "unreasonable to expect trial counsel to make subsidiary objections based on the assumption that the trial court's underlying rulings were incorrect." *Id.* Further, the court noted that, "even ignoring Cassandra's testimony, there was ample evidence to satisfy the corpus delicti rule." App. Op. at 15.

According to the California Supreme Court:

> The purpose of the corpus delicti rule is to assure that the accused is not admitting to a crime that never occurred. Hence, before a confession may be introduced *slight* corroborating facts must show independently that *a crime* has been committed by someone.

*People v. Ochoa*, 19 Cal. 4th 353, 357 (1998) (emphasis added). The parties had stipulated that Cassandra had given birth to petitioner's son. The court thus concluded that "the admitted sexual relationship provided the 'slight' corroboration that was necessary to support all of the sex offenses that had been charged." App. Op. at 15.

The Court of Appeal's determination that petitioner had no valid objection based on the *corpus delicti* rule rendered the failure of petitioner's trial counsel harmless. The Court of Appeal's finding was not contrary to and did not involve an unreasonable application of *Wiggins*. Petitioner is not entitled to habeas relief on this claim.

### C.   Admission of Cassandra's Out-of-Court Statements

Out-of-court statements constitute hearsay when the statements are offered into evidence to prove the truth of the matter asserted. *Anderson v. United States*, 417 U.S. 211, 219 (1974). Testimonial hearsay, such as prior testimony or a police interrogation, is barred under the Confrontation Clause of the Sixth Amendment unless (1) the witness is unavailable and (2) the statements have "adequate indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56 (1980). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Petitioner argues that the admission of Cassandra's out-of-court statements deprived him of his constitutional right of confrontation. Petitioner claims (1) that Cassandra was not "unavailable," as no attempt was made to compel her to testify and (2) that Cassandra's statements lacked "adequate indicia of reliability" allowing for their admissibility. Pet. at 3-4.

### 1. Availability of the victim

Petitioner argues that the trial court erred in admitting Cassandra's out-of-court statements after finding that she was "unavailable as a witness." Pet. at 18. Petitioner claims that because the trial court "made no attempt" to compel Cassandra to testify, she was not "unavailable." *Id.* at 19-20.

The Court of Appeal found that the trial court took reasonable steps to induce Cassandra to testify. App. Op. at 8. "She said repeatedly that she would not because 'it hurts too much.'" *Id.* Even if Cassandra were physically available, she was "unavailable" as a witness because she refused to testify and because the court took reasonable steps to induce her to testify until it was "obvious that such steps would be unavailing." *See People v. Sul*, 122 Cal. App. 3d 355, 365 (1981); App. Op. at 10. Cassandra discussed with counsel and the trial court why she would not testify; according to defense counsel, Cassandra appeared "adamant in her refusal to testify" and neither side thereafter sought to compel her testimony. App. Op. at 9-11.

Petitioner contends that the trial court could have done more to force Cassandra to testify, such as order her to "forego some anticipated pleasurable activity or give up some valued object" or pay a fine "proportionate, of course, to the child's allowance." Pet. at 21. In its analysis of reasonableness, the Court of Appeal found that the trial court was not "obligated to further traumatize an already fragile child who was making hopeful progress, by taking punitive measures such as taking her teddy bear or garnishing her allowance." App. Op. at 11. The court's finding was neither contrary to, nor involving an unreasonable application of, clearly established federal law.

### 2. Adequate indicia of reliability

Petitioner next contends that the trial court erroneously admitted Cassandra's out-of-court statements because the statements were unreliable. Pet. at 28.

The Sixth Amendment rights of confrontation and cross-examination are not offended by the admission of hearsay evidence if the evidence contains "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. However, "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Idaho v. Wright*, 497 U.S. 805, 822 (1990). The Supreme Court has set forth a

1  nonexclusive list of factors that courts may use to determine whether hearsay statements made by a
2  child witness in a sexual abuse case are reliable: (1) spontaneity and consistent repetition, (2) mental
3  state of the declarant, (3) use of terminology unexpected of a child of similar age, and (4) lack of
4  motive to fabricate. *Id.* at 821-822.

5        The Court of Appeal evaluated these four factors and concluded that Cassandra's statements
6  were "sufficiently reliable." App. Op. at 13-14. Cassandra's statements to the authorities were
7  consistent. She used terminology, such as "eat me," uncharacteristic of a child her age. Cassandra
8  repeatedly stated that she "loved" petitioner; she had no apparent motive to fabricate her testimony.
9  The Court of Appeal's reasoning was not contrary to and did not involve an unreasonable application
10 of *Wright*.

11       As respondent correctly notes, even if Cassandra's out-of-court statements were admitted in
12 error, the error was harmless. Petitioner's crimes were corroborated by Cassandra's pregnancy, her
13 venereal disease, and the planned flight to the Philippines. Ans. at 21.

14       In assessing harm in a habeas case, a court must ask whether "the error substantially
15 influenced the jury's decision." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation
16 marks omitted). A trial error is considered harmless under *Brecht* only if the actual jury in the case
17 would have reached the same verdict absent the error. *Gray v. Klauser*, 282 F.3d 633, 654-55 (9th
18 Cir. 2002), *judgment vacated on other grounds*, 537 U.S. 1041 (2002). A court must not go beyond
19 the record in deciding the likely effect if the error had not occurred. *Id.* at 655. If the court is
20 convinced that the error did not influence the jury, or had but very slight effect, the verdict and the
21 judgment should stand. *O'Neal*, 513 U.S. at 437.

22       This court finds that the evidence in the record, namely Cassandra's pregnancy and the
23 results of genetic testing which indicated petitioner as the father and Cassandra's contraction of
24 venereal warts, would have corroborated petitioner's own testimony absent admission of Cassandra's
25 out-of-court statements. Thus, petitioner is not entitled to habeas relief on this claim.

26       **3.    Further briefing under *Crawford***

27       After this case was fully briefed, the United States Supreme Court held that the
28 Confrontation Clause forbids admission of an out-of-court testimonial statement by a witness who

did not testify, unless the witness is both unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). This abrogated the "reliability" test set forth in *Ohio v. Roberts*, 448 U.S. 56, 65 (1980). The Ninth Circuit has held that Crawford applies retroactively to collateral attacks, and the Supreme Court is reviewing the decision. *Bockting v. Bayer*, 399 F.3d 1010, 1020 (9th Cir. 2005), *cert. granted sub nom. Whorton v. Bockting*, 126 S. Ct. 2017 (2006) (questions presented are whether *Crawford* applies retroactively to cases on collateral review, and, if so, whether *Teague v. Lane*, 489 U.S. 288 (1989), applies).

After disposition of *Worton v. Bockting*,[3] the parties are to meet and confer regarding whether further briefing is appropriate in light of *Crawford*. The parties are then to file a joint statement with the court setting forth their decision and suggesting a briefing schedule, if necessary. Alternatively, petitioner may at any time inform the court that he does not wish to pursue a claim under *Crawford*, after which the court will enter a final judgment in this action.

### III.  ORDER

For the foregoing reasons, the court:

1. defers ruling on petitioner's Confrontation Clause claim to the extent *Crawford* may be applicable, and
2. otherwise denies the petition for a writ of habeas corpus.

DATED:     9/7/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[3] The case is set for oral argument on November 1, 2006.

**Notice of this document has been electronically sent to:**

**Counsel for Petitioner:**

Richard Such          jsuch@comcast.net

**Counsel for Respondent**

Jeffrey Bryant
Gerald A. Engler
Catherine Rivlin

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    9-7-06                              /s/ JH
                                                  **Chambers of Judge Whyte**